ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | |
| | | |
| JACQUELINE YEAGER and | ) | |
| ELLEN RODRIGUEZ, | ) | |
| | ) | **SUMMONS** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HORRY COUNTY POLICE DEPARTMENT | ) | |
| LT KEVIN MICHAEL CAST, | ) | |
| CAPTAIN DANNY FURR, | ) | |
| BRIGHTON LAKES PROPERTY OWNER'S | ) | |
| ASSOCIATION, INC. | ) | |
| WACCAMAW MANAGEMENT, LLC, | ) | |
| ROBERT BECK, JEFFREY BUTTERMAN, | ) | |
| LARRY PRINCE, RAUL MORALES, | ) | |
| DARRELL MOOD, | ) | |
| KELLEY KESNER DIONNE, | ) | |
| ERIN CRISTELLO, | ) | |
| JASON SMITH, | ) | |
| MARK RODDY, | ) | |
| _____ | ) | |

## SUMMONS
## (JURY TRIAL REQUESTED)

You are hereby summoned and required to answer the complaint in this action, a copy of which is hereby served upon you, and to serve copy of your Answer to the Complaint on the subscriber at her office at 4000 Faber Place Drive, Suite 300, North Charleston, South Carolina 29405 or by Mail at Post Office Box 1845, Goose Creek, SC 29445within thirty (30) days after the service hereof, exclusive of the day of service.  If you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint and judgment by default will be rendered against you.'

Hunt Law LLC

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
SC Bar # 12341
Hunt Law LLC
Post Office Box 1845
Goose Creek, SC 29445
(843)553-8709
Facsimile (843)553-8710
bthunt@huntlawllc.com

May 1, 2026

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
)
COUNTY OF HORRY )

JACQUELINE YEAGER and )
ELLEN RODRIGUEZ, )
) **COMPLAINT**
Plaintiff, ) **(JURY TRIAL DEMANDED)**
)
v. )
)
HORRY COUNTY POLICE DEPARTMENT )
LT KEVIN MICHAEL CAST, )
CAPTAIN DANNY FURR, )
BRIGHTON LAKES PROPERTY OWNER'S )
   ASSOCIATION, INC. )
WACCAMAW MANAGEMENT, LLC, )
ROBERT BECK, JEFFREY BUTTERMAN, )
LARRY PRINCE, RAUL MORALES, )
DARRELL MOOD, )
KELLEY KESNER DIONNE, )
ERIN CRISTELLO, )
JASON SMITH, )
MARK RODDY, )
_____)

**TO THE ABOVE-NAMED DEFENDANTS:**

Plaintiffs, Jacqueline Yeager and Ellen Rodriguez, (hereinafter referred to as the

Plaintiffs), of Brighton Lakes Subdivision in Carolina Forest, by and through their attorney,

Bonnie Travaglio Hunt of Hunt Law LLC, North Charleston, South Carolina, do hereby

complain against the above-named defendants as follows:

<u>**JURISDICTION AND VENUE**</u>

1.    This action is brought pursuant to the laws of the United States of America,

including but not limited to the Constitution of the United States, Bill of Rights of the United

States, Statutes of the United States, and Case Law.

2.    This action is brought pursuant to 42 U.S.C. 1983.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

3. This action is brought pursuant to Fair Housing Act (FHA-Title 42, Chapter 45).

4. This action is brought pursuant to Homeowners Association Act, S.C Code Ann. Section 27-30-130.

5. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by state and federal law, which rights provide for injunctive and other relief for illegal acts of police officers.

6. This action is also brought pursuant to the laws of the State of South Carolina.

7. Horry County is the proper venue for this action, as all events and omissions took place in the County. All Defendants are residents of Horry County and are subject to the jurisdiction of the County.

**PARTIES**

8. The Plaintiffs, Jacqueline Yeager and Ellen Rodriguez, are individuals residing in Brighton Lakes, Horry County South Carolina. That all relevant times the Plaintiffs were citizens of the United States and protected by the United States Constitution, Laws of the State of South Carolina and the Civil Rights Act.

9. The Defendant, Horry County Police Department (hereinafter referred to as HCPD), is a law enforcement agency as defined by the law in South Carolina and located in Horry County South Carolina. Horry County Police Department is a valid governmental entity operating in South Carolina. At all times, relevant to the allegations in this Complaint, the Defendant Horry County Police Department employed several individuals in the State of South Carolina and are hereby listed as Defendants.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

10.   The Defendant, Lt. Kevin Michael Cast, is an employee of the Horry County Police Department and a resident of Brighton Lakes.  Cast is named herein in his individual capacity and as police officer for the Horry County Police Department.  Cast is subject to the laws of the State of South Carolina and the laws of the United States of America.  Cast is an owner of property in Brighton Lakes and subject to the Brighton Lakes Property Owner's Association.

11.   The Defendant Brighton Lakes Property Owners' Association, Inc. is a nonprofit corporation registered with the State of South Carolina, located in Georgetown, South Carolina.  The purpose of the Association is to manage the affairs of Brighton Lakes, a Subdivision established pursuant to the terms of the By-Laws of Brighton Lakes Property Owners' Association, Inc.  The Association is established to enforce and abide by the governing documents of the Association in a non-discriminatory manner in accordance with the law of the State of South Carolina and the United States of America.

12.   The Defendant, Waccamaw Management, LLC, is a corporation of South Carolina, located in Georgetown County South Carolina, and contracted with Brighton Lakes Property Owners' Association to provide services and enforce the rules of Brighton Lakes Property Owners' Association, Inc.

13.   The Defendant, Robert Beck, is a resident of Brighton Lakes Subdivision, South Carolina, Board Member of the Brighton Lakes Property Owners' Association, and subject to the jurisdiction of the State of South Carolina and the United States District Court District of South Carolina.

14.   The Defendant, Jeffrey Butterman, is a resident of Brighton Lakes Subdivision, South Carolina, Board Member of the Brighton Lakes Property Owners'

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

Association, and subject to the jurisdiction of the State of South Carolina and the United States District Court District of South Carolina.

15. The Defendant, Larry Prince, is a resident of Brighton Lakes Subdivision, South Carolina, President of the Brighton Lakes Property Owners' Association, Board Member of the Brighton Lakes Property Owners' Association, and subject to the jurisdiction of the State of South Carolina and the United States District Court District of South Carolina.

16. The Defendant, Raul Morales, is a resident of Brighton Lakes Subdivision, South Carolina, Board Member of the Brighton Lakes Property Owners' Association, and subject to the jurisdiction of the State of South Carolina and the United States District Court District of South Carolina.

17. The Defendant, Darrell Mood, is a resident of Brighton Lakes Subdivision, South Carolina, Board Member of the Brighton Lakes Property Owners' Association, and subject to the jurisdiction of the State of South Carolina and the United States District Court District of South Carolina.

18. Upon information and belief, the Defendants, Kelley Kesner Dionne is a resident and owner in Brighton Lakes Subdivision, and subject to the jurisdiction of the State of South Carolina and the United States District Court District of South Carolina.

19. Upon information and belief, the Defendant, Erin Cristello is a resident and owner in Brighton Lakes Subdivision, and subject to the jurisdiction of the State of South Carolina and the United States District Court District of South Carolina.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

20. Upon information and belief, the Defendant, Mark Roddy is a resident and owner in Brighton Lakes Subdivision, and subject to the jurisdiction of the State of South Carolina and the United States District Court District of South Carolina.

21. Upon information and belief, the Defendant, Jason Smith (Mark Roddy's son) is a resident in Brighton Lakes Subdivision, and subject to the jurisdiction of the State of South Carolina and the United States District Court District of South Carolina.

## FACTUAL BACKGROUND

22. Brighton Lakes of Carolina Forest is a gated community located in Myrtle Beach South Carolina, providing residents with luxury amenities, assuring convenience and tranquility.

23. Brighton Lakes Property Owners Association, Inc. is governed by the South Carolina Homeowners Association Act, S.C Code Ann. Section 27-30-130 which establishes specific duties and obligations for homeowners' associations.

24. The Plaintiffs own property located in Brighton Lakes which are subject to the Covenants, Conditions and Restrictions ("CCRs") of Brighton Lakes Property Owners Association, Inc. As property owners within the POA, the Plaintiff are members of the POA and are subject to the governing documents, including but not limited to the CCRs, Bylaws and Rules and Regulations.

25. The Defendants, Robert Beck, Jeffrey Butterman, Larry Prince, Raul Morales, Darrell Mood, Kevin Cast, Kelley Kesner Dionne, Erin Cristello, and Mark Roddy are also owners of property in Brighton Lakes Subdivision, subject to the Covenants, Conditions and Restrictions, Bylaws, Rules and Regulations of Brighton Lakes Property Owners Association, Inc.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

26.    The Plaintiffs went under contract on November 19, 2021, for the home located at 104 Zoysia Grass Court in Brighton Lakes Subdivision, Horry County, South Carolina.  The Plaintiffs lot was considered a premium lot and therefore was more costly than other lots.

27.    The Plaintiffs locked in a rate in early 2022, closed and moved into the property on July 6, 2022.

28.    The Plaintiffs are a married couple.  The Plaintiffs are members of the LGBTQ+ community.  As a result of that membership the Plaintiffs have been subjected to harassment and discrimination in their subdivision.

29.    The Plaintiffs are residents of the State of South Carolina, are property owners in Brighton Lakes Subdivision, members of the Brighton Lakes Property Association, Inc, and are neighbors to the individual Defendants, Cast, Dionne, Prince, Cristello, Smith, Roddy, Beck, Butterman, Prince, Morales, and Mood.  The Defendant, Jason Smith is the son of Mark Roddy and is a resident of Brighton Lakes Subdivision.

30.    When the Plaintiffs first moved into the home it was quiet and they enjoyed the cul-de-sac.  However, in October of 2022, the environment of the cul-de-sac changed when the final members of the community moved in, Carla and Michael Lee.  About two weeks after they moved into the neighborhood the Plaintiff requested that they not allow their children to play in their front yard as it kept setting off the ring security system.  The request was met with derision and a disrespect for appropriate boundaries.

31.    In December of 2022, a pattern of excluding the Plaintiff's began.  The Lees, across the street from the Plaintiffs had a large-scale birthday party where they invited everyone in the neighborhood but the Plaintiffs.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

32.     In December of 2022, a couple of residents in the cul-de-sac informed others that they were planning to erect a basketball hoop on their side of the cul-de-sac next to the Plaintiffs' home.  The actions of the individuals were in violation of the regulations and were going to end the quiet enjoyment of the Plaintiffs' property.

33.     Early January 2023, the Plaintiffs returned from vacation in Florida and discovered that a basketball hoop had been installed at the terminus of a shared driveway. The structure was placed in the grass between the Plaintiffs' home and the neighbors (straddling the property line between Scott Worcester and the Plaintiffs').  Within days the Plaintiffs' property began to suffer from the other residents' constant barrage of playing basketball.  The Plaintiffs' car, home, trees and landscaping were hit and damaged by the actions of the individuals that made the decision to place the hoop on the Plaintiffs' property.  At the Plaintiffs' request the basketball hoop was relocated but did not mitigate the damage to their property.  As a result of the intrusion, the Plaintiffs would have 15 to 20 people in their cul-de-sac and their front yard creating chaotic disruption.  As a result of these actions in order to alleviate the actions of these individuals, the Plaintiffs would play music to drown out the actions of their neighbors.  In response the neighbors would text requesting that the Plaintiffs turn down their music.  Ultimately the actions in the beginning were just neighbors having issues.  But then the events began to turn and the Plaintiff's sanctuary, that was their home, now became a hostile environment.  Toward the end of January, the environment of the neighborhood began to change and became more hostile with neighbors congregating in front of the Plaintiffs' home having gossip sessions and allowing their dogs to relieve themselves deep in the Plaintiffs' yard.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

34. In January of 2023, the Plaintiff, Jacqueline Yeager, was ostracized from the Facebook group for Brighton Lakes.

35. On January 18, 2023, Kelley Kesner Dionne addressed the Plaintiffs after an Annual HOA meeting. Dionne accused the Plaintiffs of yelling at her daughter. The Plaintiff's informed Dionne that they requested her daughter stop hitting their garage door with her basketball and if there was a problem with their issue, to have her mom come talk to them directly. After this interaction, the Plaintiffs attempted to deescalate the situation by establishing a peace-the Lees and Dionne agreed to maintain property boundaries and keep their children out of the Plaintiffs' yard. The Lees and Dionne demanded a public apology for the Plaintiffs' Facebook post regarding the father-in-law's actions. The Plaintiff's protested but agreed. However, the neighbors defaulted on the agreement and resumed their actions in earnest ruining the Plaintiffs' quiet enjoyment of their property and home.

36. On February 8, 2023, the Plaintiffs filed a formal complaint regarding the basketball hoop. This action intensified the frequency and hostility of the disruption from the neighbors by and through their children.

37. As a result of the formal complaint, the Board attempted to legitimize the nuisance and violation of the covenants by filing a manufactured ARB notice for the hoop. It was later determined that this action of failing to enforce the covenants was a violation.

38. On March 1, 2023, the Plaintiffs again were forced to address the neighbors' children in their yard. The Plaintiffs notified Dionne of her children's actions as per the agreement. After the text was sent requesting that the children stay out of the Plaintiffs' landscaping and not trespass, a group of parents arrived in front of the Plaintiffs' home to

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

harass the Plaintiffs' and intimidate them. The unfortunate circumstance of this action by the mob of parents including the Lees, Cudd, Worcester and Dionnes marked the transition of the actions of neighborly disputes to an organized conspiracy to inflict undue harm, harassment, and disruption of the enjoyment of their property. The Group entered into a coordinator effort to infringe upon the Plaintiff's legal property rights and to influence the Property Owners' Association to harm the Plaintiffs and inflict intentional emotional distress, while ruining the property value and destroying quiet enjoyment.

39.     On March 10, 2023, In an effort to mitigate the harm being caused, the Plaintiffs filed a formal complaint with the Brighton Lakes Property Owners Associate through Waccamaw Management, LLC. The Plaintiffs provided notice the POA that they were under siege and needed relief from the bullying and the hostilities based on their protected status.

40.     On March 13, 2023, the Plaintiffs and others were involved in a verbal altercation that led to a no longer neighborly environment but a marked change that began retaliatory actions towards the Plaintiffs. Dionne specifically lied stating she had called the police and then denied having called them. The police arrived and informed the Plaintiffs that they were there to investigate the Plaintiff, Jacqueline Yeager for "harming and beating a child behind a dumpster." After an initial discussion the police left without dispersing the mob in the cul-de-sac. The mob in the street engaged in verbal harassment of the Plaintiffs. The failure of the police to handle the situation and disperse the crowd/mob granted them permission to harass the Plaintiffs.

41.     The Plaintiffs posted to Facebook that they were safe on the neighborhood page. The post was removed and labeled a lie by the administrator.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

42.    The POA ignored the Plaintiffs' requests for assistance in direct violation of the Mission statement and contract thereby breaching the agreement.

43.    The day after the altercation the basketball hoop was relocated.  These actions were in an attempt to mitigate the complaints of the March 10th complaint.

44.    The Plaintiffs security system was utilized by the Plaintiffs to determine if there was invasions of the cul-de-sac by the residents when they were away or just when they were home.  Their observations proved true that the residents only invaded the cul-de-sac and trespassed on the Plaintiffs property when the Plaintiffs were home.  The Security System proved that when the Plaintiffs were out there was no disruption but the minute, they arrived home the disruption erupted.

45.    The month of March ensued with overwhelming issues of harassment that culminated into April of 2023.  During the April 2023 POA meeting several individuals began a tirade regarding the Plaintiffs' lifestyle.

46.    In the May 2023 Newsletter the POA Board posted rules regarding lights on homes.  This action was directed at the Plaintiffs and their gay pride lights.  Other members of the subdivision were not harassed regarding their lights, Ryan Robins lights were non-compliant, but no action was taken against him.  The Plaintiffs were required to remove their lights as they were damaging to children.  Others were non-compliant and continued to be non-complaint.

47.    On April 23, 2023, the Plaintiff, Jacqueline Yeager filed a police report with the Horry County Police Department regarding harassment and attempted to mitigate the damage being inflicted by the Defendants.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

48.	By early May it was clear that the motive of the individual Defendants was clear to inflict the ultimate harm upon the Plaintiffs based on their gay lifestyle and harass them to inspire them to move.  The Plaintiffs attempts to involve the police and mitigate their damage were doomed.

49.	It was ultimately determined that the Horry County Police Department would not stop the hate speech and harassment of the Plaintiffs based on their protected status.  The officers adopted a flippant and dismissive posture when addressing the Plaintiffs.  The officer determined that the actions of the individuals who were harming the Plaintiffs' property, infringing on their property rights, intimidating them, and inflicting harm based on their gay lifestyle was protected "freedom of speech."  A blatant miscarriage of justice and delineation of the law to avoid the enforcement of it.  The actions of the police department in allowing the assaults and harassment of the Plaintiffs were a violation of the law.  The HCPD was using the power given to them by the government to violate the rights of the Plaintiffs.

50.	From May to June 2023, the Plaintiffs determined that if the Police would not protect them, they would attempt to protect themselves and filed a complaint regarding violations of the Fair Housing Act, contending protection was warranted due to their LGBTQ+ status and disabled veteran status.  The complaint was filed May 13, 2023.  The Plaintiffs provided notice to the board of the complaint, and the board blatantly ignored the complaints.

51.	On June 9, 2023, the Plaintiffs filed a complaint with Waccamaw Management regarding the neighbors and their actions of harassment.  The Plaintiffs filed a formal complaint with HUD due to the harassment.  The Plaintiffs put the POA on notice

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

that they had a duty to correct harassment from a 3rd party in the community.  The Plaintiffs informed the Defendants that they were LGBTQ and a protected status and they are not permitted under the law to harass them based on their protected status.

52.     On June 12, 2023, the Plaintiffs received a violation for their colored lights.

53.     From July 2023 to November 21, 2023, the Plaintiffs were so despondent due to the environment created by their neighbors, the board and the HCPD they moved to California temporarily in hopes that the situation would de-escalate.  The Plaintiffs only returned to their home for the Thanksgiving holiday.  The fact that the Plaintiffs left their home for 4 months serves as proof that the Defendants made their home uninhabitable and the quiet enjoyment of their property was non-existent.

54.     The Plaintiffs returned to their property on November 22, 2023, for the holiday and within 24 hours of their return attempted to engage in neighborly socialization with a neighbor they had interacted with in the past.  While engaging in conversation with this neighbor a group of children were strategically deployed to disrupt the conversation and harass the Plaintiffs.

55.     The POA's refusal to address the Plaintiffs concerns regarding the actions of the neighbors and the failures of the enforcement was a blatant abandonment of the contract by the POA and a failure of Waccamaw Management to enforce.

56.     On December 13, 2023, the Plaintiff, Jacqueline Yeager, was subjected to a verbal assault from a minor child from the Roddy Residence.  The Child proceeded to subject the Plaintiff to an aggressive, homophobic tirade regarding the Plaintiff's lifestyle. The Plaintiff had no previous interaction with the Roddy family.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

57. As a result of the actions of the Roddy child, the Plaintiff, Jacqueline Yeager, made an anonymous observational and emotional post to Facebook regarding the hostility of the neighborhood. The Plaintiff's post was then attacked by Kelly Kesner Dionne, Erin Cristello, Carla Lee and Tanya Bruce. Dionne proceeded to engage in Defamation, repeating the original defamation that occurred in March and disseminating the information that Yeager had harmed and beat a child behind a dumpster. Dionne characterized the March 2023 event as a "factual" attack by Yeager. Dionne's actions of continuing to defame Yeager were a violation of the law. Each publication was an independent event and the repetition continued to harm the reputation of the Plaintiff, Yeager.

58. On December 29, 2023, the Plaintiffs notified Waccamaw Management of children trespassing and damaging their property.

59. On December 30, 2023, the Plaintiffs filed a formal complaint with Waccamaw Management regarding children trespassing and damaging their property.

60. In early January 2024, in an attempt to see if the POA and Waccamaw would enforce the CCR's equally the Plaintiffs put up their own Basketball Hoop on their property.

61. Further in early January 2024, the Brighton Lakes POA Board held an annual meeting. During the meeting numerous residents protested the failures of the Board by refusing to hold quarterly meetings and lack of transparency. The Board had unilaterally suspended the quarterly meetings after the verbal assault of the Plaintiffs in April 2023. The Board stated that the monthly meetings were not open to residents. The actions of the Board were in direct violation of the POA's governing documents.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

62. On January 31, 2024, the Plaintiff, Ellen Rodriguez, sent a request to Waccamaw management requesting information regarding the place of the Board meeting. Rodriguez stated that the Bylaws indicate that these meetings are open to all voting members. Rodriguez requested the location of the meetings, topics for discussion, and grant members permission to speak.

63. In February 2024, the Plaintiffs in an attempt to enter into a truce with their neighbors invited the neighbors to dinner in February. Certain neighbors accepted the invitation for February.

64. In February 2024, the Plaintiff, Yeager issued a formal notice to the Board for violating the bylaws of the POA by failing to allow the residents access to the monthly meetings. The actions of the POA Board not allowing the residents to attend the meetings, failing to announce the time and location was a breach of contract with fraudulent intent pursuant to the law.

65. During the truce dinner arranged by the Plaintiffs in February, the Plaintiffs learned that through the interaction that the individual residents of the neighborhood were conspiring to ruin the Plaintiffs' quiet enjoyment of their property. The Plaintiff, Ellen, pointed out that the other neighbors were conspiring.

66. As a result of the Plaintiffs' attempts to de-escalate the situation and create a truce was met with negativity and adversity.

67. The Spring of 2024 saw a breakdown of the relationship between the agitators and Carla Lee provided evidence that Dionne was conspiring with others to attempt to ruin the Plaintiffs' quiet enjoyment of their home based on their sexual orientation.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

68.    On April 22, 2024, the Plaintiff, Yeager received an official invitation to join the newly formed administrative body, the covenant's committee.  The Plaintiff, Yeager, hoped this would be a option to alleviate the problems with her neighbors and to obtain equal enforcement of the rules that applied to her neighborhood.  However, it quickly became an Administrative Block as Defendant's Mood and Prince failed and refused to enforce the rules consistently and fairly.  The Board issued a formal committee contract containing restrictive language that failed to align with the mission of the committee.  The Plaintiff, Yeager, refused to sign the document as it failed to align with the mission of the committee.  The Actions failed to foster community equity.  The operational window of the Covenant's Committee was brief and held no weight.  The Plaintiff, Yeager, attempted to introduce equity, fairness and proactive outreach to Brighton Lakes governance structure. The Committee attempted to instill transparency and independent oversight but Prince took offense to the actions and implemented Administrative Resistance.  Prince during this time was elected Board President and decided to torch the Covenant's Committee and their authority.  Prince shut down all proposals for community equity.  The committee never met again.

69.    Due to the dissolution of the Covenant's Committee and other actions by Prince and Robert Beck the Plaintiffs would now suffer retaliation, harassment, and selective enforcement of the POA rules.

70.    In June of 2024, Tiffany Robins launched a defamation campaign against the Plaintiffs' publicly announcing that the Plaintiffs were guilty of child neglect and were leaving their grandchildren (ages 14, 10 and 9) unattended.  During the summer of 2024,

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

Tiffany Robins would regularly in a state of alleged significant intoxication and launch violent verbal accusations against the Plaintiffs.

71. In the Summer of 2024, Erin Cristellos' Father was visiting his family and proceeded to assault the Plaintiff, Yeager with a leaf blower. During the assault, the father-in-law proceeded to yell profanities and insults at the Plaintiff.

72. On November 8, 2024, Lynn Agnew King, published information that the Plaintiff, Yeager was mentally ill. On this day Tiffany Robins decided it was required to flip Yeager the bird while she was in her front yard.

73. In Early January, Raul Morales and Darrell Mood were elected to the Board. Morales was the Secretary for the Board of Directors and Mood was the Member at Large. Morales was further the liaison for the Beautification Committee and Covenants Committee and Mood was the Liaison for the Social Committee. The wives of the board members were serving on committees. The Defendants, Morales and Mood utilized their position of power to breach their fiduciary duty to the Plaintiffs, selectively enforce the rules and regulations and violation the property rights of the Plaintiffs.

74. In the Newsletter for January of 2025, the Board stated that the Monthly Board of Directors Meetings: "Please be advised that the Board usually meets on the first Friday of every month at the Amenity Center beginning at 10:00 A.M. Please check the Town Square calendar for any changes. This is a business meeting, not an open forum." The Newsletter further set forth: "Annual Meeting and Election of Officers: A notice of the annual meeting was mailed out to every homeowner in Brighton Lakes on December 6. Included in the packet was a brief resume for each of the candidates, a proxy form and a self-addressed stamped envelope. The quorum needed to hold the meeting required a

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

minimum of 1/3rd of the proxy's and or ballots of the Brighton Lakes homeowners, only 119 mailings of the 267 Owners were returned. The annual meeting was held on January 8that the Carolina Forest Recreation Center. Approximately 64 households were represented at the meeting. Proxies and Ballots were counted by two Waccamaw representatives and confirmed by two residents. Elected to the Board of Directors were Darrell Mood and Raul Morales, re-elected was Bob Beck. Our thanks and appreciation go out to Orv Cullen and Tony Avia for their time and service to the community." The Newsletter also stated: "Architectural Review Board (ARB) Violations Reminder: In the event that you are in receipt of an ARB violation letter, please note that an owner has 10 days to address the issue. Please notify Waccamaw of your remediation plan so that a fine can be avoided. It is the owner's responsibility to make this contact. Thanks, in advance, for your cooperation."

75.    In March of 2025, Dionne began to complain about children damaging her property and interrupting her quiet sanctuary. **The Plaintiff, Yeager made comment regarding this and stated that the Plaintiff only complained about a blade of grass and was not the same.**

76.    The April newsletter for the Board introduced a new internal fine structure allowing the POA to penalize residents for alleged violations of state law and fire hazards. The structure allowed the Board to act as a Judge and Jury.

77.    The fine structure targeted the grievances of Dionne including drones, twine and basketball hoops.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

78.     On April 4, 2025, Jason Smith, who did not live in the cul-de-sac entered proceeded to enter the cul-de-sac and stalk the Plaintiffs' home where they were having a gathering of their gay friends.

79.     On April 30, 2025, Lt. Kevin Cast closed and moved into 105 Zoysia Grass Court.  The move into the neighborhood invoked a shift in the conspiracy that began the harassment of the Plaintiffs' twofold.

80.     In the Newsletter for May of 2025, the Board stated the following:   *"Monthly Board of Directors Meetings:  Please be advised that the Board is now meeting on the First Tuesday of every month at the Amenity Center beginning at 10:00 A.M. Any changes will be noted on the Brighton Lakes calendar. This is a business meeting, not an open forum. The June meeting will begin at 12:00 PM  DRONE AWARENESS Piloting a drone is a one of the hobbyists' latest area of interest.  For those who are drone pilots, please keep in mind that drones are regulated by the Federal Aviation Administration and South Carolina State Law. In South Carolina, while it's legal to fly drones over private property, there are restrictions, particularly if the drone is equipped with a camera. South Carolina law prohibits flying drones with cameras over private property without the owner's consent.  Additionally, drones with cameras must maintain a minimum distance of 200 feet from people, buildings or structures. Drones piloted in Brighton Lakes are subject to these restrictions!  Reminder-Basketball Backboards Reminder- Permanent basketball goals may be located at driveway: however, the backboards may not face the street. Portable basketball backboards are allowed but must be stored away when not in use. Storage must be at the furthest point from the street on the driveway of the owner. All backboards must be transparent Plexiglas. There are no provisions for playing basketball*

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

*on any street in Brighton Lakes.*  *Architectural Review Board (ARB) Procedures* *Please note that new projects must be approved by the ARB before the work is started. Please contact Waccamaw if there are questions or concerns."*

81.    In May of 2025, the POA board decided to initiate a sudden aggressive enforcement in cul-de-sacs/streets and banned all basketball hoops.  The Dionne complaint initiated the sudden enforcement.  The Plaintiffs' complaints were ignored.  Cristello complied with the request and brought the basketball hoop into her driveway.

82.    In May of 2025, the POA newsletter escalated its selective enforcement campaign and attempted to regulate the airspace around the neighborhood.  The Board contended that flying drones over the neighborhood was illegal.  The policy targeted the Plaintiff, Yeager's, activity as an FAA Part 107 licensed pilot.  The Board decided to criminalize the Plaintiff, Yeager's, flight operations.

83.    As a result of the Board's selective enforcement, Yeager sent a letter to the Board objecting to their misinformation.  On May 16, 2025, the Plaintiff, Yeager, filed a formal notice with the Brighton Lakes POA Board, documenting specific instances of administrative misconduct and selective enforcement.  The Board did not response to these allegations.  The Board showed its failures to administer the rules and regulations fairly and equitably targeting those that it disagreed with their lifestyles.

84.    On May 16, 2026, the Plaintiff, Ellen Rodriguez submitted a formal complaint which set forth the following:  *"I am submitting this formal complaint to document and request immediate corrective action regarding repeated violation of your duties as an HOA Board, unresolved neighbor harassment, selective rule enforcement, and retaliatory conduct that may rise to the level of illegality under South Carolina state*

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

*law and other federal statutes. 1. Ongoing Nuisance and Unaddressed Complaints  Since Feb. 2023, I have filed multiple documented complaints regarding a neighbor's basketball hoop and the disruptive, unsafe, and potentially damaging activity associated with its use. These unresolved complaints included: hitting my home, car and landscaping with basketballs; Loud, disruptive screaming and daily noise in residential cul-de-sac; Use of the cul-de-sac as a playground in violation of community safety expectations and nuisance rules.  Despite my initial and follow-up complaints in February 2023, March 2023, and February 2024, the board failed to take any meaningful action.  The hoop remained out of compliance for over two years, and I have yet to receive a clear or timely response.  Recently, posts on social media indicate the Board may have granted permission to the residents who were in violation, but failed to notify us of the resolution. Moreover, the community playground rules, updated in December 2023, explicitly prohibit screaming and rough play-yet the behavior in the cul-de-sac mirror exactly that, and frankly worse.  In response to the HOA's ongoing failure to enforce its own rules regarding basketball hoops-despite multiple complaints over more than two years-I ultimately installed the hoop myself.  This decision was made in light of a clear precedent set by the Board's inaction and inconsistent enforcement, which signaled to residents that such installments were permissible.  Essentially, the board sanctioned Zoysia Grass Ct as a park for basketball, baseball, football, pickleball (homeowners who don't live near us had a pickleball net in front of our house along with an audience to watch), volleyball, scooters, small motorcycles not intended to be ridden on the road.  2. Harassment and Retaliation Following Complaints:  After raising these concerns:  A group of residents harassed us and even falsely reported us to the policy, summoning a group of 10-15 neighbors to*

*watch and publicly humiliate us. We were accused of child abuse and labeled as child haters without cause, a clear case of defamation and emotional harassment, which we reported to the HOA in March 2023. We submitted photographic evidence of individuals gathered outside our home. In total, we have documented at least 16 separate communications regarding this ongoing harassment from the same group of neighbors associated with the basketball hoop with no showing concern or resolution from the board and labeled it as a neighbor to neighbor dispute. 3. Discriminatory Treatment and Retaliation Over Rainbow Lights/Colored Lights In June 2023, a neighbor openly mocked our rainbow colored lights, comparing them to 'tits and ass' in a board meeting-an incident that occurred with the entire board present and without censure. This individual was removed temporarily for his conduct, but was then allowed back to the meeting to continue his harassment unchecked. Shortly after, a complaint was lodged against us regarding those lights, we believe from this neighbor, but was denied confirmation of that fact. While we complied, we noted that other neighbors with similar lighting violations, including the member who harassed us, were not sanctioned, and the HOA refused to address our request for equal treatment. This inconsistency, in the context of mocking LGBTQ-affirming décor, may constitute discrimination under State and Federal Law. We filed a Fair Housing Complaint after this incident and maintain full documentation. We also filed a harassment complaint naming the individuals and the board's actions with Horry County. 4. Improper Targeting and Inconsistent Rule Enforcement: Following these events: The HOA sent us a violation notice in April 2023 for a security camera placed inside our own home, aimed at our own car and driveway, which we explicitly explained0was a measure taken after repeated damage concern from basketball and other play on our private*

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

property. We complied and removed it, even though other homes have similar external-facing cameras, without being cited. We have been informed by individuals formally involved in a group text that Raul Morales and/or his wife with others may have participated in discussions that included defamatory references to us, including the use of slurs. If this is true, it is deeply troubling and warrants investigation by the Board. Recently, I confronted Mr. Morales directly, and he did not deny or confirm his or his wife's involvement, however this new enforcement activity against basketball hoops and drones began a few short weeks after my interaction with him-which appears retaliatory and personally motivated. 4A. Hostile Unprofessional Conduct by Board Related Individuals: In January 2025, during a publicly advertised event where community members were invited to ask questions of those running for the board, I personally experienced hostile and dismissive behavior. When I raised legitimate questions: The candidate(s) in question abruptly shut down my questions, displayed a hostile attitude, and acted in an abhorrent manner in front of attending community members. This conduct was publicly noted and discussed on Brighton Lakes Uncensored, a community Facebook page, reflecting broad concern about the professionalism and respect shown toward residents. Additionally, I remind the board that Larry Prince's wife has publicly mocked community members on Facebook, belittling those how raise concerns about the board's compliance enforcement. This behavior fosters a hostile environment and undermines trust in the board's ability to fairly and impartially serve the community. 5. Legal Implications: The following actions (or failures to act) by the board raise serious legal concerns, not just for us but for everyone in the community: Selective enforcement of HOA rules. Preferential treatment to some, but not others. Retaliation for filing complaints, Failure to address

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

*harassment, intimidation, and defamation by residents, Discriminatory treatment linked to protected class status (including LGBTQ+ expression), Improper delegation of permission to neighbors without proper procedure or transparency, Defamatory and breach of fiduciary duty by board members.*

*These may constitute violation of South Carolina HOA law, a breach of fiduciary duty, and potential violations of federal and state fair housing statutes. Specifically, South Carolina Human Affairs Law (S.C. Code Ann Section 1-13-10 et seq) prohibits discrimination in housing and related community matters based on race, color, religion, sex, national origin, disability, familial status, and age. Although sexual orientation and gender identify are not explicitly covered under state law, these categories are protected under the federal Fair Housing Act (42 U.S.C. Sections 3601-3609), which applies to housing-related discrimination, including HOA enforcement and community interactions. Discrimination or selective enforcement based on LGBTQ+ expression (such as the display of rainbow lights) may violate these federal protections and implicate the board in discriminatory and retaliatory conduct. The board's failure to act on or investigate harassment and defamation related to these protected statuses may also violate these laws. The board's inaction and targeted responses are not only deeply unprofessional- they may be legally actionable under both state and federal law, and failure to correct these actions could expose the HOA and individual board members to liability.*

*Request for Immediate Action*

*I am formally requesting:*

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

*1.    A written response from the Board regarding the basketball hoop and its long-standing noncompliance and why are they now after 2.5 years and multiple complaints deciding to enforce a rule they have long since abandoned?*

*2.    A written explanation of the Board's actions taken (or not taken) in response to my lingering and unresolved documented complaints.*

*3.    Immediate investigation and/or confirmation of whether any Board member have participated in defamatory group chats or events targeting our household. We are seeking clarification from the Board regarding whether any current Board member or their family member has engaged in these discussions, and if so, what actions will be taken to address such conduct, which undermines both the dignity of the position and the trust of the community.*

*5. Assurance our household will receive equal protection and enforcement under HOA rules, free from harassment or retaliation.*

*If this matter is not resolved promptly and transparently, I will pursue further action through legal channels, including the South Carolina Department of Consumer Affairs, the South Carolina Human Affairs Commission and any other State or Federal Agency that could provided clarification on the law.*

*Sincerely, Ellen Rodriguez and Jacqueline Yeager.*

85.    On May 16, 2025, the Plaintiff sent a second letter titled:

***Formal Objection to Drone "Awareness" Notice-Legal Clarification and Concern for Safety*** *Description Dear Board President and HOA Board Members, I am writing in response to the recent HOA newsletter "drone awareness" notice, which*

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

*includes misleading and factually incorrect implications about the legality of drone operations over private property in South Carolina.*

*I must state clearly and for the record: I Jacqueline Yeager am licensed and compliant drone operator who has flown in the neighborhood for over two and a half years without a single documented complaint or safety incident. I conduct all flights in accordance with FAA Part 107 regulations, which are the sole legal authority governing U.S. airspace, including the airspace above private property.*

*Yet the vague and accusatory nature of the HOA's newsletter notice has now cast suspicion on lawful activity; and will create unfounded fear among neighbors, and-most alarmingly-put me and my family at risk by insinuating that drone operators are violating community norms or breaking the law when flying a drone.*

*Key Legal Facts*

*Please be advised of the following:*

*Airspace is federally regulated. Neither private landowners nor HOAs can claim exclusive rights to the air above their home. The Federal Aviation Administrative (FAA) maintains sole jurisdiction over navigable airspace in the United States. (49 U.S. Code Section 40103)*

*South Carolina law (S.C. Code Section 16-17-760) criminalizes only specific forms of drone misconduct-such as voyeurism, stalking, or interfering with emergency personnel-not general flight over private property.*

*To be blunt: Flying a drone in this neighborhood is not illegal. And suggesting otherwise in a community-wide communications fosters misinformation, neighbor conflict, and potential retaliation.*

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

*My Family's Safety and Reputation*

*I am extremely concerned that the HOA has chosen to publish such language without: 1. Verifying its legal accuracy; 2. The one-line citation of South Carolina law regarding "consent to fly over property" misrepresents the intent of the statute, which is narrowly focused on preventing malicious or invasive surveillance, not regulating routine, federally lawful drone flights conduct under FAA authority. Misusing that law to suggest all overhead flight requires consent is both misleading and legally inaccurate. 3. Offering residents any prior notice or opportunity to clarify their drone activity.*

*This lack of due diligence creates the false impression that simply seeing a drone overhead means someone is being 'watched'-a dangerous and inflammatory assumption.*

*Because of this, my family now again feels unnecessarily targeted, and the vague tone of the HOA's message only emboldens those with personal grievances to act in hostility or even defame us in community spaces as they have in the past and in the present.*

*Let me be clear: the publication of misinformation that implies criminality where none exists is irresponsible and could rise to the level of defamation or negligent endangerment if it results in reputational harm or retaliation.*

*Request for Immediate Correction*

*I am formally requesting that the HOA:*

*1. Issue an immediate correction bulletin clarifying that FAA-licensed drone flights are legal and that not all drone operations over private property are unlawful or invasive.*

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

*2.      Include references to both FAA Part 107 and S.C. Code Section 16-17-760, so residents are properly informed.*

*3.      Acknowledge that drone operators-just like photographers, dog walkers, and landscapers have the right to use public spaces and shared airspace respectfully and legally.*

*We must foster a community based on facts, not fear.  I remain committed to being a respectful and responsible neighbor, and I expect the HOA to act with the same level for care, impartiality, and responsibility.*

*Please respond in writing within 10 business days confirm how the board intends to address this issue.*

86.      On May 29, 2025, the Plaintiffs received a formal violation notice for the basketball hoop.  The Board facilitated the prohibition through the Architectural Review Board.  The Board had spent years ignoring the Plaintiffs documented grievances regarding basketball-related harassment and all of a sudden decided to enforce the issues through the ARB.

87.      On May 29, 2025, the Plaintiffs received a letter from Waccamaw Management for the Board of Directors stating the following:

*"Dear Homeowner:*

*"Brighton Lakes Property Owners' Association, Inc. is a planned community created and governed by recorded deed restrictions and/or rules and regulations. The purpose of this concept is to ensure the development of the Association as it was originally envisioned. Further, these governing documents guarantee that Brighton*

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

*Lakes Property Owners' Association, Inc. will continue to be a beautiful, well-maintained community.*

*Certain restrictions have been established in order to preserve the uniform and aesthetic appeal of The community. Although compliance may sometimes seem to be a personal annoyance, these governing documents are enforced logically and impartially. In this way, the property values are enhanced for all owners. The Association is responsible for ensuring that compliance with the governing documents is consistently maintained. Regular tours are made in the community and situations noted.*

*On a recent property inspection, the following violation was noted:*

***Basketball Goals - basketball backboard not in compliance***

*Please refer to the following:*

***ARB Guidelines #9:***

*Permanent basketball goals may be located at driveway; however the backboards may not face the street. Portable basketball goals are allowed, but must be stored away when not in use. All backboards must be transparent Plexiglas.*

*Consider this correspondence the First Step of your Association's enforcement process. You are required to respond to this notice in writing with a plan of action or upon remediation within ten (10) calendar days. Failure to respond appropriately will lead to the next step in accordance with your Association's governing documents and a fine of $100.00. All appeals must be submitted in writing within ten (10) days of the notification to be considered by your Board of Directors.*

*Please address all you communication to Waccamaw Management at info@waccamawmanagement.com.*

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

*We appreciate your cooperation and prompt response in this matter for the benefit of all property values within Brighton Lakes Property Owners' Association, Inc.*

88.    On June 4, 2025, the Plaintiff, Yeager, filed an appeal of the violation issued on May 29th violation of the basketball hoop.

**Subject: Formal Request for Appeal-Basketball Hoop Violation Notice.**

*Dear Board Members, I am writing in response to the recent notice I received regarding the basketball hoop at my residence.  While I understand the importance of maintaining community standards, I respectfully wish to appeal this violation and raise concerns regarding it timing, consistency, and broader context.*

*The basketball hoop in question has been in place for approximately 1.5 years without any prior notice, warning, or enforcement action.  During that time, similar basketball hoops have also existed throughout the community without issue.*

*Multiple Board members have ridden by and waived at me while playing.*

*The absence of enforcement for such an extended period reasonably signaled to homeowners-myself included-that the presence of a basketball hoop in the cul-de-sac was acceptable…*

*Additionally, this enforcement actions comes after multiple, well-documented attempts on my part to report basketball hoop use in the cul-de-sac and retaliatory behavior within the community when I complained-concerns which were either dismissed or not addressed.  It is difficult not to view the timing of this violation notice, after years of silence, as potentially selective and retaliatory.  Such selective enforcement can erode community trust and may carry serious implications under both HOA covenants and SC law.*

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

*Given these concerns, I am formally requesting an appeal of this violation notice and respectfully ask that any enforcement actions, including fines, be suspended until a fair and transparent review is completed.*

*I also request the following:*

*1.    A citation of the specific community covenant or rule under which the enforcement is being issued.*

*2.    Clarification on whether this is part of a broader enforcement effort, and if so, whether all residents with similar installations have been notified.*

*3.    An explanation of how enforcement decisions are made and by whom, to ensure consistency and fairness.*

*4.    All recorded notes from the board meetings since January 2025.*

*My intention is to work toward a reasonable resolution and ensure that community rules are applied uniformly and without bias.  I trust the board shares that same commitment to fairness and transparency.*

*Thank you for your attention to this matter.*

89.    The Plaintiff, Yeager, contended that the Board failed to answer her complaints in 2023 but now was attempting to enforce compliance.  This was selective enforcement and retaliation for the Plaintiffs previous complaints.

90.    On July 1, 2025, the Board scheduled a hearing regarding the Plaintiffs' appeal.  The hearing proceeded and there has been no final determination.  The Board's failure is a further breach of contract.  Following the hearing, the Plaintiff, Yeager, requested transparency and it was met with systematic stonewalling by the management company and the POA.  Waccamaw Management refused to allow access to association

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

contract, claiming inability to share information. The information was legally due to members in good standing. The failure to produce the information was a violation of the CCR's.

91. During the hearing, Jeffrey Butterman, Board member attempted to frame the Plaintiffs' concerns regarding the basketball hoops and damage to their property as their personal dislike of children playing outside and not an actual complaint regarding the hoops. The Statements by Butterman for slanderous and a blatant misrepresentation of facts and further dismissive statements regarding actual complaints rooted in safety, property rights, and peaceful enjoyment of the Plaintiffs' property.

92. On July 1, 2025, as a result of the board's actions in the hearing the Plaintiffs filed a complaint with the State regarding the actions of the POA. The complaint alleged selective, retaliatory and potentially discriminatory enforcement actions by Brighton Lakes POA and its governing board. The complaint further stated that the Board was failing and refusing to be transparent, failing to ensure that due process was provided to residents, and discriminating against the Plaintiff and creating a hostile environment based on their protected status.

93. In July of 2025, the Board announced that Keven Cast was an officer with Horry County Police Department.

94. On July 6, 2025, the Plaintiffs filed a Formal Request regarding the Board's authority to amend the fine structure without a member's vote. The Plaintiff requested that the Board clarify and provide documentation regarding the Board's authority to amend the fine structure that occurred a day after the Plaintiffs appeal hearing.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

95.     Further on July 6, 2025, the Plaintiffs made a formal demand for documentation, legal Justification and Preservation of Records.  July 6th request was related to the Plaintiffs' December 29, 2023, nuisance complaint and the failure to the Board to handle the matter.

96.     On July 8, 2025, the Plaintiffs made a formal request for Records regarding Fines Issued and Board Actions.

97.     On July 11, 2025, Kimberly Burgos with Waccamaw Management provided a response to the fine issues presented by the Plaintiff stating the following:

*1. Article XII, Section 9 is relative to the Declaration of Covenants and Restrictions only and does not state that a vote is required for a fine increase.  2. The Board reviewed the complaints and, to the best of their ability, addressed them.  I have already provided the information regarding this.  There needs to be a certain amount of understanding from owners in a community regarding children playing.  Outside of what the Board could do to remedy this; this issue is a neighbor-to-neighbor issue and needs to be handled amongst yourselves.  The Board cannot control what an owner allows their children to do. 3. This request was responded to as well.  The ARB Guidelines do not require an owner vote to be created or changed.*

98.     On July 17, 2025, Steve Goldfinch, the Present of Waccamaw Management, informed William Weaver that: "The Board of Directors cannot discuss any violations or enforcement efforts involving the Yeager's neighbors in a public forum such as this.  The Board makes every effort to enforce and maintain the rules and regulations of the association and to always treat each member with the same respect and care.  The Board of Directors will do everything possible to maintain the beauty of the association

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

and peaceful coexistence of all its members." The POA and Waccamaw Management failed and refused to provide any documents that the Plaintiffs were entitled to.

99. On August 5, 2025, the Plaintiffs received another letter from Waccamaw Management:

*In accordance with your Association's enforcement process, you were sent a letter asking that you comply with the Association's governing documents regarding a violation. Upon a recent inspection of your property, It was noted that the violation has not been corrected.*

***Basketball Goals - basketball backboard not in compliance***

*Please refer to the following:*

*ARB Guidelines #9:*

*Permanent basketball goals may be located at driveway; however the backboards may not face the street. Portable basketball goals are allowed, but must be stored away when not in use. All backboards must be transparent Plexiglas.*

*Since the violation has not been rectified or has occurred again within twelve (12) months of the original violation date, the next step of the enforcement process calls for a S100.00 fine to be charged to your account. Please make your check payable to Brighton Lakes Property Owners' Association. Inc. and mail to 605 Briarwood Drive, Suite C, Myrtle Beach, SC 29672.*

*You are required to respond to this notice In writing with a plan of action or upon remediation within ton (10) calendar days or a fine of $250.00 will be charged to your account All appeals must be submitted in writing within ten (10) days of the fine notification to be considered by your Board of Directors.*

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

*Please address all you communication to Waccamaw Management at info@waccamawmanagement.com.*

*We appreciate your cooperation and prompt response in this matter for the benefit of all property values within Brighton Lakes Property Owners' Association, Inc.*

100.    On October 4, 2025, the Plaintiff Yeager was making a routine trip to her mailbox.  When approaching her mailbox she was stalked by Jason Smith.  Smith posted the interaction to Facebook stating he was rage-baiting the Plaintiff.  Jason Smith assaulted the Plaintiff Yeager in attempts to elicit a physical altercation from the Plaintiff.  Mark Roddy contributed to the situation and made several comments on the Facebook page regarding the actions.

101.    After the incident, Jason Smith edited his recording to slander the Plaintiff, Yeager, in order to falsely frame Yeager as the aggressor.  The Plaintiff released the full version of the incident due to Smith's altered version.

102.    The Plaintiffs called the Horry County Police Department in home to secure an intervention and report the assault on October 4th & 5th of October.  The call was responded to by HCPD Officer Brandon Hayes.  Officer Hayes failed to handle the situation.  Officer Hayes' only suggestion was that the Plaintiff-Yeager contact Carolina Forest High School as Roddy was the band director.

103.    On October 5, 2025, the Plaintiff Yeager filed a formal complaint with Waccamaw Management for Nuisance and Harassment.  The Plaintiff provided a detailed account of the incident based on her LGBTQ status.  The Board and Waccamaw failed and refused to respond.  On January 3, 2026, the Plaintiff sought a status update.

104.    The Plaintiffs went to Florida for the Christmas Holiday.  While they were in Florida, they observed the installation of a Trampoline at the Cristello's residence.  The trampoline was originally situated next to the Cristello's screened-in porch.  However, the Cristellos moved the trampoline closer to the Plaintiffs' property line directly under the Plaintiffs' second story double windows.

105.    When the Plaintiffs returned to South Carolina, they were subjected to 3 hours of high decibel screaming of children directly outside their windows.

106.    In the January newsletter, the Board sent forth that any trampolines in the subdivision were to be shielded from any front-facing road.  The Cristellos' trampoline was in direct violation of the regulation considering they had a double frontage property.

107.    On January 4, 2026, Waccamaw Management informed the Plaintiffs that they had handled the trampoline violation.

108.    On January 5, 2026, Kimberly Burgos with Waccamaw Management delivered the response of the Board to the Plaintiffs' formal complaint.  The Board's response was that they had consulted an attorney and determined that the issues the Plaintiffs were suffering were beyond their scope of responsibility.

109.    On January 23, 2026, the Plaintiffs renewed their complaint regarding the trampoline as Cristello moved the trampoline closer to the Plaintiffs' property in reaction to the complaint.  Waccamaw Management failed and refused to enforce the rules and selectively enforced the regulations.

110.    On January 24, 2026, the Plaintiffs made a 2nd formal request regarding the Trampoline.  On January 25, 2026, the Plaintiffs informed Cristello that they were contributing to an attractive Nuisance and that the Trampoline was a violation.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

111. On January 26, 2026, Waccamaw responded and stated that the Board is committed to enforcing the community guidelines fairly and consistently. The Trampoline was not moved.

112. On February 17, 2026, the Plaintiffs notified the Board that they had filed a formal complaint regarding the unanchored trampoline with Horry County Planning and Zoning for Investigation due to the Board's failure to handle the matter.

113. On March 2, 2026, the Plaintiffs requested access to inspect and obtain copies of association records related to all citations and corresponding fines issued by the HOA over the past 6 months in accordance with the South Carolina Homeowners Association Act, S.C Code Ann. Section 27-30-130.

114. On March 3, 2026, Kimberly Burgos with Waccamaw Management informed the Plaintiffs that they had provided violations and fines for the basketball hoops for two years and that she had created it for the Plaintiffs as owners are not entitled to this information. This allegation is not correct as the Plaintiffs were entitled to the redacted information.

115. On March 4, 2026, the Plaintiff, Yeager witnessed the Defendant Lt. Cast and the HOA President Larry Prince engaging in a conversation. After the conversation, the Police arrived at the Plaintiffs' residence regarding a music complaint. Officer Daniel Turner addresses the complaint with the Plaintiff and denies Cast involvement. Officer Turner specifically informed the Plaintiffs that he had been sent a video and was instructed by an unnamed source to tell the Plaintiffs "don't do that again." Turner was presented with the Plaintiffs evidence of the assault that occurred on October 4, 2025, and stated he would look into it. Turner was unwilling or unable to explain why the HCPD was

responding to a mid-afternoon music call when the department had historically failed and refused to respond to the Plaintiffs' Noice complaints near 11PM that were in actual violation of the ordinances.

116. On March 4, 2026, the Plaintiff Yeager went to Lt Cast's home to inquire regarding the incident. Cast demanded that the Plaintiff leave his property with aggression. While walking away Cast instructed Yeager to hustle, in response the Plaintiff turned around and saw that Cast was armed, had his hand on his firearm. Yeager asked Cast if he was going to shoot her. Cast informed the Plaintiff Yeager that he was "just practicing."

117. On March 5, 2026, due to Cast arming himself during the incident on March 4, 2026, the Plaintiff, Yeager filed a formal complaint with SLED and Internal Affairs of HCPD.

118. Overall, the Plaintiffs reported the rage bait incident to 4 separate officers for HCPD and all refused to enforce the law and do anything about the assault of the Plaintiff, Yeager.

119. On March 5, 2026, the Plaintiff, Yeager informed an officer about the incident with Cast. The Officer informed Yeager that he would relay the information to Captain Danny Furr, Cast's direct supervisor.

120. As a result of the Plaintiff, Yeager's complaints to Furr, Cpl. Perkins was dispatched with two additional officers to discuss the incidents with Cast and the October 2025 incident with Jason Smith.

121. On March 6, 2026, Furr and the Plaintiff, Yeager had a conversation regarding the incidents in Brighton Lakes. The Plaintiff informed Furr that Cast was using

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

his position as an HCPD to intimidate her. During the conversation, the Plaintiff, Yeager, informed Danny Furr about the LGBTQ+ harassment issue in October 2025. Yeager informed Furr that she could not understand why HCPD was at her house for a music complaint in late afternoon, but they could not be bothered to respond to an assault on her based on her protected status. Furr informed the Plaintiff that the HCPD department has a standing policy that they do not police speech. Furr also informed the Plaintiff that the department's policy was one of deliberate indifference. The statements of Furr informed the Plaintiff that the HCPD had no interest in equity or the protected status of the Plaintiffs. Furr did not deny the allegation that Lt Cast had called HCPD for the dispatch of an officer on March 4, 2026, to the Plaintiffs' home. The Plaintiff Yeager informed Furr that Cast had abused his power and used police resources falsely against the Plaintiff and now the Plaintiffs were worried about the HCPD ability to respond should they need them. The Plaintiffs are located in the 5th Precinct and Cast in a Lt. in the 5th Precinct. Furr assured the Plaintiffs that he was going to sit down with Lt Cast for a talk.

122. On March 7, 2026, the Plaintiffs served Cristello with notice they were planning to file suit regarding the trampoline.

123. On March 10, 2026, the Plaintiff Yeager was contacted by Captain Danny Furr and informed that Cast will stay out of HOA business. The fact that Furr stated that they would stay out of HOA business did not negate the actions that had been previously taken and harmed the Plaintiffs.

124. On March 13, 2026, the Plaintiffs filed a Response to Nuisance Complaint informing Waccamaw Management company there was no music coming from their home

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

during quiet hours.  Ann Rigoli with Waccamaw Management informed the Plaintiffs "your response has been received, and the violation has been closed. Thank you!"

125.    On March 15, 2026, Cristello reinstalled the trampoline in violation of the POA regulations and letter.

126.    On March 24, 2026, the Plaintiffs filed a formal complaint with the Magistrate Court due to the failure of the Board and Waccamaw Management to follow the law.

127.    The Brighton Lakes POA and Waccamaw Management executed a failure of their fiduciary duty to the Plaintiffs when they refused to handle the incidents of discrimination within the community.

128.    The Plaintiffs' lifestyle choices did not affect the community.  However, the Defendants went out of their way to affect the Plaintiffs' life choices by inflicting extensive emotional distress in order to force them to leave the neighborhood.

129.    Upon information and belief, the Defendants, HCPD and Lt. Kevin Michael Cast used their law enforcement power and control to violate the civil rights of the Plaintiffs.

130.    Upon Information and belief, the Defendants, Brighton Lakes POA, Waccamaw Management, LLC, Larry Prince, Robert Beck, Jeffrey Butterman, Raul Morales, and Darrell Mood are abusing their membership on the Board of the POA to abuse the process, Breach the POA agreement, and discriminate against the Plaintiffs based on their protected status as members of the LGBTQ+ community, in violation of the laws of United States of America and South Carolina including but not limited to Fair Housing Act, and the common law.

**COUNT I**
**42 U.S.C. 1983**

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

**AGAINST HORRY COUNTY POLICE DEPARTMENT,**
**LT KEVIN MICHAEL CAST AND CAPTAIN DANNY FURR**

131.     The Plaintiffs reallege and incorporate paragraphs one (1) through one hundred and thirty.

132.     That the Defendants acted instituted and pursued false charges against the Plaintiff.

133.     That the Defendants falsely accused the Plaintiffs of various crimes.

134.     That the Defendants harassed the Plaintiffs at their residence regarding noise complaints.

135.     That the Defendants violated the Plaintiffs' Constitutional rights to Free Association, First Amendment rights, and Fourth Amendment Rights.

136.     The Defendants conduct was objectively unreasonable and violated clearly established law.

137.     That the Defendants by actions and omissions maliciously pursued false reports, false accusations, to harass and torment the Plaintiffs', destroy the Plaintiffs' reputation and subject the Plaintiffs to irreparable harm.

138.     That during a verbal discussion with the Plaintiff, Yeager, the Defendant Kevin Michael Cast decided to harm himself and threaten the Plaintiff.

139.     That the Defendants illegally harassed the Plaintiffs without probable cause. The Plaintiffs have been harassed, stopped and detained in violation of their civil rights.

140.     The Defendants used their power for preferential and selective enforcement of the POA's Rules and Regulations.

141.     The Defendants violated United States Code Section 1983.

A.      They failed and refused to protect the Plaintiffs' civil rights;

B.      They failed and refused to utilize the proper policies and procedures of the department;

C.      Violated the Plaintiffs' civil rights;

D.      Falsely accused the Plaintiffs of actions they did not commit.

E.      Falsely stated the Plaintiffs were involved in Criminal Activity and violations of the CCR's.

142.    That, as a direct and proximate result of the Defendants unconstitutional conduct, gross negligence and recklessness disregard for the Plaintiffs' Rights pursuant to the State of South Carolina and the United States Constitution, the Plaintiffs:

a.      Suffered emotional distress;

b.      Suffered the loss of employment;

c.      Suffered the loss of future employment;

d.      Suffered damage to his reputation.

143.    That the Plaintiffs are entitled to judgment against the Defendants, Lt. Kevin Michael Cast and Captain Danny Furr, for actual damages, consequential, punitive damages and all other damages available pursuant to the allowances and restrictions of the United States Code of Laws Section 1983.

**COUNT II**
**ABUSE OF PROCESS**
**AGAINST HORRY COUNTY POLICE DEPARTMENT AND LT. KEVIN MICHAEL CAST**

144.    That the Plaintiffs realleges paragraphs one (1) through one hundred and forty-four.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

145. That the Defendant, Lt. Kevin Michael Cast acted with an ulterior purpose by lying to Dispatch regarding the Plaintiffs for alternative purposes.

146. Lt. Kevin Michael Cast acted with malicious intent towards the Plaintiffs.

147. That willful act of presenting false information to dispatch to have the Plaintiffs harassed by the police was a willful act to misuse the process as a Police Officer of the HCPD.

148. That the Defendant, Lt. Kevin Michael Cast, committed definite acts not authorized by the process.

149. That nothing about the actions by the Defendant was to carry out the legitimate functions of the process.

150. That the Defendants perverted use of the process has damaged the reputation of the Plaintiffs.

151. That the Plaintiffs are entitled to all damages available pursuant to the law including but not limited to actual, compensatory and consequential damages.

**COUNT III**
**ASSAULT**
**AGAINST LT. KEVIN MICHAEL CAST**

152. That the Plaintiffs realleges paragraph one (1) through one hundred and fifty-one.

153. On March 4, 2026, the Plaintiff approached the Defendant, Kevin Michael Cast to address his grievances regarding a report to the police.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

154. The Plaintiff attempted to amicably resolve the issue. However, Kevin Michael Cast instead of attempting to resolve the issue demanded the Plaintiff, Yeager, to leave his property immediately.

155. The Plaintiff, Yeager, proceeded to walk away from the Defendant, Kevin Michael Cast. The Plaintiff was not moving fast enough for the Defendant, Kevin Michael Cast, and he instructed her to hustle. As a result of this instruction, the Plaintiff turned around to look at Cast. At this time, Cast had his hand on his HCPD issued handgun. The Plaintiff asked Cast if he was going to shoot her. Cast's response was that he was "just practicing."

156. The Defendant, Kevin Michael Cast, assaulted the Plaintiff by placing his hand on his HCPD issued weapon in a threatening manner. The Defendant, Kevin Michael Cast, acted with willful intent to scare the Plaintiff.

157. The Plaintiff, Yeager, had a reasonable fear of bodily harm.

158. The Defendant, Kevin Michael Cast, is the direct and proximate cause of damage to the Plaintiff, Yeager for his willful acts of presenting a weapon when there was no actual reason for self-defense.

159. The Plaintiff, Yeager, is entitled to damages from Kevin Michael Cast, for his malicious acts against the Plaintiff, in the amount of actual, compensatory, consequential, and punitive damages.

<b><u>COUNT IV</u></b><br>
<b><u>BREACH OF CONTRACT</u></b><br>
<b><u>AGAINST BRIGHTON LAKES PROPERTY OWNERS' ASSOCIATION, INC,<br>
WACCAMAW MANAGEMENT, LLC, ROBERT BECK, JEFFREY BUTTERMAN,<br>
LARRY PRINCE, RAUL MORALES, AND DARRELL MOOD</u></b>

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

160. The Plaintiffs realleges and incorporates paragraphs one (1) through one hundred and fifty-nine.

161. Plaintiffs and Defendants entered into a contract where the Defendants would provide certain services as provided by the Contract in exchange for payment from the Plaintiffs.

162. The terms of the contract were dictated by the CCRs, Rules and Regulations.

163. That the Defendants failed and refused to enforce the terms of the contract. The Defendants further failed to treat the Plaintiffs fairly under the terms of the contract. The Defendants selectively enforced the terms of the contract violating the terms of the contract.

164. Defendants violated the terms of the contract as set forth above. The Defendants failed and refused to comply with the terms of the contract.

165. The Defendants are the direct and proximate cause of damages to the Plaintiffs for the breach of the contract.

166. That the Plaintiffs are entitled to damages from the Defendants for their breach of the contract in the amount of actual damages.

<u>**COUNT V**</u>
<u>**BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT/DETRIMENTAL RELIANCE**</u>
<u>**AGAINST BRIGHTON LAKES PROPERTY OWNERS' ASSOCIATION, INC, WACCAMAW MANAGEMENT, LLC, ROBERT BECK, JEFFREY BUTTERMAN, LARRY PRINCE, RAUL MORALES, AND DARRELL MOOD**</u>

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

167. The Plaintiffs realleges and incorporates paragraphs one (1) through one hundred and six-six.

168. Plaintiffs and Defendants entered into a contract where the Defendants would provide certain services as provided by the Contract in exchange for payment from the Plaintiffs.

169. The terms of the contract were dictated by the CCRs, Rules and Regulations.

170. That the Defendants failed and refused to enforce the terms of the contract. The Defendants further failed to treat the Plaintiffs fairly under the terms of the contract.

171. The Defendants made promises with the intent to and knowledge who induce the Plaintiffs to enter into the contract.

172. The Plaintiffs reasonably relied on the promises of the Defendants.

173. That the Defendants were aware of the deficiencies and failed to act in the best interests of the homeowners. That the Defendants selectively enforced certain terms of the contract.

174. The Defendants never intended to follow the contract due to the Plaintiffs' protected status as members of the LGBTQ+ community.

175. That the Defendants were dishonest and dealt with the Plaintiffs unfairly to perpetrate their scheme rather than for a legitimate purpose.

176. The Defendants are the direct and proximate cause of damages to the Plaintiffs for the breach of the contract.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

177. That the Plaintiffs are entitled to damages from the Defendants for their breach of the contract in the amount of actual damages.

<strong>COUNT VI</strong><br>
<strong><u>NUISANCE</u></strong><br>
<strong><u>AGAINST BRIGHTON LAKES PROPERTY OWNERS' ASSOCIATION, INC,
WACCAMAW MANAGEMENT, LLC, ROBERT BECK, JEFFREY BUTTERMAN,
LARRY PRINCE, RAUL MORALES, AND DARRELL MOOD</u></strong>

178. The Plaintiff realleges and incorporates paragraphs one (1) through one hundred and seventy-seven.

179. That the Defendants failed and refused to maintain areas around the Property by enforcing the CCRs, Rules and regulations by the rule of law.

180. That the Defendants failed and refused to enforce the CCRs, Rules and Regulations of the Property Owners' Association in accordance with the contract.

181. That the Defendants created and perpetrated various nuisances which were intentionally and negligently inflicted upon the Plaintiffs.

182. That the Defendants made unreasonable interferences into the lives and business of the Plaintiffs in such a manner that would upset an ordinary person.

183. The nuisance would not have occurred if it were not for the negligent manner in which the Defendants failed to enforce the CCRs of the Defendants.

184. Due to the Defendants nuisance, and failure to maintain the CCRs, rules and Regulations, the Plaintiffs have suffered the following damages:

    a. Pursing matters in Magistrate Court;

    b. Mental anguish; and

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

c. Associated legal fees & costs.

185. The Plaintiffs are entitled to damages from the defendants in the amount of actual damages, incidental damages, consequential, compensatory damages, interests, costs, attorney fees and other damages as determined by the Court.

<u>**COUNT VII**</u>

<u>**NEGLIGENCE**</u>

<u>**AGAINST BRIGHTON LAKES PROPERTY OWNERS' ASSOCIATION, INC, WACCAMAW MANAGEMENT, LLC, ROBERT BECK, JEFF BUTTERMAN, LARRY PRINCE, RAUL MORALES, AND DARRELL MOOD**</u>

186. The Plaintiffs realleges and incorporates paragraphs one (1) through one hundred and eighty-five.

187. That the Plaintiffs and Defendants entered into a contractual relationship, in which the Defendants would provide POA services to the Plaintiffs. The Plaintiffs in return would compensate the Defendants for their work performed.

188. The agreement was entered into when the Plaintiffs purchased the property. The Defendants failed and refused to provide those services to the Plaintiffs and breached the contract, as agreed upon.

189. That the Defendants made negligent representations to the Plaintiffs costing them expenses and emotional pain associated with the misrepresentations.

190. The Defendants negligently performed their duties and responsibilities as defined by the Contract and due to this negligence owe the Plaintiffs damages.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

191.    The Defendants are the proximate and direct cause of damages to the Plaintiffs and therefore the Plaintiffs are entitled to damages from the Defendants for their failures as set forth above.

## COUNT VIII
### VIOLATION OF SOUTH CAROLINA HOMEOWNERS' ASSOCIATION ACT AGAINST BRIGHTON LAKES PROPERTY OWNERS' ASSOCIATION, INC, WACCAMAW MANAGEMENT, LLC, ROBERT BECK, JEFFREY BUTTERMAN, LARRY PRINCE, RAUL MORALES, AND DARRELL MOOD

192.    That the Plaintiffs realleges paragraphs one (1) through one hundred and ninety-one.

193.    That the Plaintiffs and Defendants entered into a contractual relationship, in which the Defendants would provide POA services to the Plaintiffs.  The Plaintiffs in return would compensate the Defendants for their work performed.   The agreement constituted a contract under the SC HOA, Act.

194.    The Defendants failed and refused to uphold the terms of the contract in violation of the SC HOA, Act.

195.    The Defendants have failed to completely remedy the Plaintiffs' complaints for the services contracted for.

196.    That the Plaintiffs are entitled to all damages available pursuant to the SC HOA, Act..

## COUNT IX
### ABUSE OF PROCESS/MALICIOUS PROSECUTION AGAINST BRIGHTON LAKES PROPERTY OWNERS' ASSOCIATION, INC, WACCAMAW MANAGEMENT, LLC, ROBERT BECK, JEFFREY BUTTERMAN, LARRY PRINCE, RAUL MORALES, DARRELL MOOD, KEVIN MICHAEL CAST KELLEY KESNER DIONNE AND ERIN CRISTELLO

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

197.    That the Plaintiff realleges paragraphs one (1) through one hundred and ninety-six.

198.    That the Defendants acted with an ulterior purpose when utilizing the CCRs, Rules and Regulations of the Brighton Lakes Property Owners' Association.

199.    The Defendants acted with malicious intent towards the Plaintiffs.

200.    That willful act of presenting utilizing the POA regulations, rules, and CCRs was a willful act to misuse the process.

201.    That the Defendants committed definite acts not authorized by the process.

202.    That nothing about the actions by the Defendants were to carry out the legitimate functions of the process.

203.    That the Defendants perverted the use of the process to damage the reputation and mental health of the Plaintiffs.

204.    That the Plaintiffs are entitled to all damages available pursuant to the law including but not limited to actual, compensatory, consequential damages, and punitive damages.

**COUNT X**
**VIOLATION OF FAIR HOUSING ACT**
**AGAINST BRIGHTON LAKES PROPERTY OWNERS' ASSOCIATION, INC,**
**WACCAMAW MANAGEMENT, LLC, ROBERT BECK, JEFFREY BUTTERMAN,**
**LARRY PRINCE, RAUL MORALES, DARRELL MOOD KEVIN MICHAEL CAST**
**KELLEY KESNER DIONNE ERIN CRISTELLO AND MARK RODDY**

205.    The Plaintiffs realleges and incorporates paragraphs one through two hundred and four.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

206.    The Fair Housing Act prohibits discrimination in housing-related activities including HOA/POAs.  The U.S. Department of Housing and Urban Development has interpreted sex discrimination under the FHA to include sexual orientation.

207.    The Defendants selectively enforced the rules of Brighton Lakes Property Owners Association in violation of the FHA.  The Defendants harassed, created a hostile environment and interfered with the Plaintiffs use and enjoyment of their property based on the sexual orientation.

208.    The Defendants inflicted disparate treatment upon the Plaintiffs and took adverse action by failing and refusing to equally enforce the rules and denied the rights of the Plaintiffs.

209.    That the Defendants' actions were based on the Plaintiffs' sexual orientation as set forth above.

210.    The Plaintiffs are entitled to damages as a result of the actions of the Defendants as set forth by the law.

**COUNT XI**
**SLANDER AGAINST KELLEY KESNER DIONNE**

211.    The Plaintiffs realleges and incorporates paragraphs one (1) through two hundred and ten.

212.    That the Defendant, Dionne, made certain false statements regarding the Plaintiff and continuously repeated those false statements.

213.    That the false statements were intentionally made by the Defendant, in order to ruin the reputations of the Plaintiffs, and interfere with the Plaintiffs' rights.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

214. That the Defendant intentionally made false statements regarding the integrity of the Plaintiffs in order to harm the Plaintiff, Yeager.

215. That the Defendant lacked any justification for the actions she took. The Defendant has continued to publish the statements to others and not just the first time outside the statute of limitations.

216. That the Defendant is the direct and proximate cause the Plaintiffs being significantly damaged by the false statements.

217. That the Plaintiffs has been significantly damaged by the actions of the Defendant.

218. That the Plaintiffs are entitled to damages from the Defendant in the amount of actual, compensatory, consequential and punitive damages for their unlawful actions of slandering the Plaintiffs and accusing her of violence against children.

## COUNT XII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST ALL DEFENDANTS

219. The Plaintifsf realleges and incorporates paragraphs one (1) through two hundred and eighteen.

220. That the Defendants' behavior was absurd, intentional, reckless and inflicted severe emotional distress on the Plaintiff.

221. That the actions of the Defendants were calculated to emotionally harm the Plaintiffs.

222. That the Defendants conduct was extreme and outrageous and highly inappropriate.

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

223. That the Defendants caused the Plaintiffs severe emotional distress by their inappropriate actions and offensive actions.

224. That the Defendants are the direct and proximate cause of emotional distress to the Plaintiffs by their illegal actions.

### COUNT XIV
### CIVIL CONSPIRACY BETWEEN LARRY PRINCE AND KEVIN MICHAEL CAST

225. The Plaintiffs realleges and incorporates paragraphs one (1) through two hundred twenty-four.

226. The Defendants Prince and Cast worked together to violate the Plaintiffs' property rights, freedom of speech, and quiet enjoyment of their property.

227. That the Defendants Prince and Cast acted to affect the Plaintiffs' property value and actual damages.

228. The Plaintiffs suffered special damages as a result of the actions of the Defendants.

### COUNT XIV
### ASSAULT AGAINST JASON SMITH

229. The Plaintiffs realleges and incorporates paragraphs one (1) through two hundred and twenty-eight.

230. On October 4, 2025, the Plaintiff Yeager was making a routine trip to her mailbox. When approaching her mailbox she was stalked by Jason Smith. Smith posted the interaction to Facebook stating he was rage-baiting the Plaintiff. Jason

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

Smith assaulted the Plaintiff, Yeager, in attempts to elicit a physical altercation from the Plaintiff.

231. The Defendant, Jason Smith, assaulted the Plaintiff by attempting to rage bait her. The Defendant, Jason Smith, acted with willful intent to scare the Plaintiff.

232. The Plaintiff, Yeager, had a reasonable fear of bodily harm.

233. The Defendant, Jason Smith, is the direct and proximate cause of damages to the Plaintiff, Yeager for his willful act.

234. The Plaintiff, Yeager, is entitled to damages from Jason Smith, for his malicious acts against the Plaintiff, in the amount of actual, compensatory, consequential, and punitive damages.

**WHEREFORE**, the Plaintiff respectfully requests the following relief:

Entry of judgment in favor of the Plaintiffs and against the Defendants;

F. Actual Damages,

G. Future Damages,

H. Emotional Damages,

I. Compensatory and consequential damages;

J. Punitive damages;

K. All damages available pursuant to Fair Housing Act;

L. All Damages available pursuant to South Carolina Homeowners' Association Act;

M. All damages available pursuant to Federal and State Law;

N. All damages available to the Civil Rights Act 42 U.S.C. 1983;

O. Attorney's fees and costs; and

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345

P.   All other damages as this Honorable court sees fit.

Hunt Law LLC

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
SC Bar # 12341
Hunt Law LLC
Post Office Box 1845
Goose Creek, SC 29445
(843)553-8709
Facsimile (843)553-8710
bthunt@huntlawllc.com

May 1, 2026

ELECTRONICALLY FILED - 2026 May 01 11:50 AM - HORRY - COMMON PLEAS - CASE#2026CP2603345